IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD B. ELLIS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No.  08-cv-00628-DRH-DGW |
| | ) |
| UNITED STATES OF AMERICA *et al.*, | ) |
| | ) |
|    Defendants. | ) |

## REPORT AND RECOMMENDATION

The matters before the Court are a motion to dismiss, or in the alternative, a motion for summary judgment (Doc. 30) filed by the United States of America, M. Chastain, Dr. David F. Szoke, Charles Welch, and Leslee Duncan (collectively "defendants"), and Plaintiff Edward Ellis's motion to voluntarily dismiss Count II of his complaint (Doc. 48). For the reasons discussed below, the undersigned recommends that both motions be **GRANTED.**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Edward Ellis ("plaintiff") is a federal prisoner who alleges that while he was incarcerated in the Marion, Illinois federal prison ("USP Marion"), he suffered injuries to his right leg as a result of an assault (Doc. 6). Contending that USP Marion officials failed to provide him with adequate medical treatment for his injuries, plaintiff filed this lawsuit alleging defendants Chastain, Szoke, Welch, Duncan, and USP Marion Health Services denied him medical care in violation of the Eighth Amendment, and defendant Chastain denied him medical care due to his race in violation of the Fourteenth Amendment (Doc. 6, Counts I and III). Plaintiff additionally brought a negligent medical care claim (Count II) against defendants Szoke, Welch, Duncan, and USP Marion Health Services under the Federal Tort Claims Act ("FTCA), 28 U.S.C. §2675(a). *See* Doc. 6. After the Court conducted its

preliminary review of plaintiff's case, it dismissed plaintiff's claim against USP Marion Health Services but allowed plaintiff to proceed against the individual defendants (Counts I and III) and against the United States of America under the FTCA (Count II). *See* Doc. 6.

On April 28, 2009, defendants filed a motion to dismiss, or in the alternative, a motion for summary judgment on all three of plaintiff's claims (Docs. 30, 31). They maintain Counts I and III should be dismissed because plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997(e), and contend Count II should be dismissed because plaintiff failed to file an administrative tort claim in accordance with the FTCA. *See* 28 U.S.C. §2675(a). Plaintiff has since filed a motion to voluntarily dismiss Count II (Doc. 48). However, plaintiff contends this Court should not dismiss Counts I and III because, while he acknowledges he failed to exhaust his administrative remedies, the actions of USP-Marion prison officials prevented him from exhausting. *See* Docs. 39, 52.

Federal prisoners must exhaust administrative remedies by following the guidelines set by the Bureau of Prisons ("BOP"). *See* 28 C.F.R. §542.10 *et seq.* Generally, an inmate incarcerated in a federal prison must take the following four steps to exhaust his administrative remedies. First, he must attempt to resolve it informally with the prison's staff. 28 C.F.R. §542.13. Second, after trying to resolve his concerns informally, he may submit a written Administrative Remedy Request (BP-9) to the Warden. 28 C.F.R. §542.14. These first two steps must be performed within 20 days of the incident about which the inmate complaints. *Id.* Third, if his administrative remedy request is denied, he may appeal it to the appropriate regional director by submitting at BP-10 form. 28 C.F.R. § 542.15. And fourth, if the inmate is unsatisfied with the regional director's response, he may appeal that decision to the general counsel (BP-11). *Id.* While this four step process is the normal route an inmate must utilize to exhaust his administrative remedies, if the inmate reasonably believes the issue is sensitive and the inmate's

safety or well-being would be placed in danger if his administrative request became known at the institution, he does not have to send his administrative request to anyone at the prison. 28 C.F.R. §542.14. Instead, he can mark the request "Sensitive", explain why he did not submit his request to the prison, and send it directly to the appropriate "Regional Director." *Id.*

Plaintiff filed his complaint on September 4, 2008 (Doc. 1). The complaint contains a section asking plaintiff what steps he took to exhaust his administrative remedies. (Doc. 1, p. 3). Plaintiff answered the questions as follows:

> A. Is there a prisoner grievance procedure in the institution? Yes.
> B. Did you present the facts relating to your complaint in the prisoner grievance procedure? No.
> . . .
> D. If your answer is "no," explain why not.
>
> My injury/assault occurred on August 2, 2007. I wrote over *one dozen* "cop-outs[1]" (i.e. requesting of staff members pleading for medical attention to my injury thinking I'd get more than aspirin and an ace bandage — but I was in the hole for the next 4 months . . . ***I thought they would help me and I'd not need to file "grievances."***

(Doc. 1, p. 3) (emphasis added). After defendants filed their motion, plaintiff filed a response acknowledging he did not file an Administrative Remedy Request, but states his reason for not doing so was that prison officials refused to provide him with the form (Doc. 39). Specifically, he testified that "on twelve separate occasions, he asked UPS staff members to provide him with the form, but they ignored his requests" (Docs. 39, 39-1). He also maintains he asked defendant Chastain for the proper grievance form but that she ignored him *Id.* Plaintiff next contends that a fellow inmate, overhearing plaintiff's repeated requests for the proper form, gave plaintiff a "Sensitive 10" form (i.e. a BP-10 form)

---

[1] According to defendants, a "cop out" is an informal letter that the prison can write to someone asking for help, but it is not a part of the informal process established by the BOP under 28 C.F.R. §542.13. (Doc. 52, pp. 12, 27).


safety or well-being would be placed in danger if his administrative request became known at the institution, he does not have to send his administrative request to anyone at the prison. 28 C.F.R. §542.14. Instead, he can mark the request "Sensitive", explain why he did not submit his request to the prison, and send it directly to the appropriate "Regional Director." *Id.*

Plaintiff filed his complaint on September 4, 2008 (Doc. 1). The complaint contains a section asking plaintiff what steps he took to exhaust his administrative remedies. (Doc. 1, p. 3). Plaintiff answered the questions as follows:

> A. Is there a prisoner grievance procedure in the institution? Yes.
> B. Did you present the facts relating to your complaint in the prisoner grievance procedure? No.
> . . .
> D. If your answer is "no," explain why not.
>
> My injury/assault occurred on August 2, 2007. I wrote over *one dozen* "cop-outs[1]" (i.e. requesting of staff members pleading for medical attention to my injury thinking I'd get more than aspirin and an ace bandage — but I was in the hole for the next 4 months . . . ***I thought they would help me and I'd not need to file "grievances."***

(Doc. 1, p. 3) (emphasis added). After defendants filed their motion, plaintiff filed a response acknowledging he did not file an Administrative Remedy Request, but states his reason for not doing so was that prison officials refused to provide him with the form (Doc. 39). Specifically, he testified that "on twelve separate occasions, he asked UPS staff members to provide him with the form, but they ignored his requests" (Docs. 39, 39-1). He also maintains he asked defendant Chastain for the proper grievance form but that she ignored him *Id.* Plaintiff next contends that a fellow inmate, overhearing plaintiff's repeated requests for the proper form, gave plaintiff a "Sensitive 10" form (i.e. a BP-10 form)

---

[1] According to defendants, a "cop out" is an informal letter that the prison can write to someone asking for help, but it is not a part of the informal process established by the BOP under 28 C.F.R. §542.13. (Doc. 52, pp. 12, 27).

to send to Washington, D.C. *Id.* Plaintiff states he mailed the BP-10 form to Washington D.C., but he never received a response. *Id.*

The Court had an evidentiary hearing on this issue in accordance with *Pavey v. Conley,* 544 F.3d 739, 742 (7th Cir. 2008). Plaintiff, through his counsel, repeated the points he raised in his response to defendants' motion. *See* Doc. 52. He reiterated his position that he tried to use the normal four step grievance procedure but contended the staff at the prison prevented him from doing so. He stated:

> I tried to file my grievances; they wouldn't give me forms to file the grievances. I was in the hole. I didn't have access to those grievances. I was able to get a Sensitive 10 [BP-10 form] from another inmate on which he grieved his medical care for his right leg and submitted it by mail to the Director of the Bureau of Prisons."

(Doc. 52, p. 15). Plaintiff's counsel then advised the Court that no one responded to plaintiff's BP-10 form, at which point, the Court informed plaintiff's counsel that plaintiff mailed it to the wrong address by mailing to the Director of the Bureau of Prisons in Washington, D.C. (Doc. 52, p. 16). According to the regulations, inmates must mail BP-10's regarding sensitive issues to the appropriate *regional director*. Defendants argued that it is undisputed that plaintiff did not exhaust his administrative remedies, and that plaintiff's story as to why he failed to exhaust severely changed after he filed his complaint (Doc. 52, pp. 10-12). Their position is that plaintiff failed to exhaust because he chose not to file a grievance on this issue. *Id.* After the evidentiary hearing, plaintiff filed a supplemental response to defendant's motion stating that he mistakenly advised the Court that he mailed a BP-10 to the director of the BOP, and that he meant to say he mailed a "Sensitive BP-11" to Washington, D.C. (Doc. 49).

Lawsuits filed by inmates are governed by the provisions of the PLRA. That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

until such *administrative remedies as are available are exhausted.*" 42 U.S.C. § 1997e(a) (emphasis added).   The burden of proof on the affirmative defense of exhaustion lies with the defendants. *Westefer v. Snyder,* 422 F.3d 570, 577 (7th Cir 2005).  The Seventh Circuit, however, requires strict adherence to the PLRA's exhaustion requirement.  *Doe v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) (noting "[t]his circuit has taken a strict compliance approach to exhaustion.").   Exhaustion must occur before the suit is filed.  *Ford v. Johnson,* 362 F.3d 395, 398 (7th Cir. 2004).  "Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending." *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require.").   *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted."). *Doe,* 438 F.3d at 809.

While the PLRA requirements may appear stringent, "the exhaustion requirement is not jurisdictional." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (citing *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).  "If administrative remedies are not "available" to an inmate, then the inmate cannot be required to exhaust." *Id.* Administrative remedies are "not available" when "prison officials prevent inmates from using the administrative process detailed in the Code of Federal Regulations, the process that exists on paper becomes unavailable in reality." *Id.* Moreover, "when prison officials fail to provide inmates with forms necessary to file an administrative grievance, administrative remedies are not available." *Id. citing Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004). Nevertheless, an inmate cannot rely on an argument that an administrative remedy is "unavailable" when the reason why he failed to exhaust is his own fault. *Id; Schaefer v. Bezy,* 2009 WL 1931187, \*\*2 (7th Cir. July 7, 2009); *see also, Pavey,* 544 F.3d 739, 742 (7th Cir. 2008).  For example, when an inmate

5

fails to "file a grievance in a timely manner, the process is not unavailable but rather forfeited." *Kaba,* 459 F.3d at 684.

As noted above, the pending motion filed by defendants is an alternative motion for summary judgment. Summary Judgment is proper when "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.56(c); *Greeno v. Daly,* 414 F.3d 645, 652 (7th Cir. 2005). In this case, the parties filed conflicting affidavits to support their arguments to support or oppose defendants' motion. Therefore, if the record before the Court consisted only of defendants' motion and plaintiff's response, the Court could not make a credibility determination based only on the conflicting court documents that were filed. *See Washington v. Haupert,* 481 F.3d 543, 550 (7th Cir. 2007) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts . . . ."); *see also Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) ("summary judgment cannot be used to resolve swearing contests between litigants.")

In this case, however, the Court conducted an evidentiary hearing to decide this issue; *See* Doc. 52; *Pavey,* 544 F.3d at 742. Consequently, credibility determinations are not prohibited here. *See Towns v. Holton,* 2009 WL 3073148, **1-4 (7th Cir. Sept. 22, 2009) (remanding case back to district court when court merely accepted defendants' argument about exhaustion without making a credibility finding about the inmate's argument); *see also Davis v. Francis,* 2009 WL 4894593, *1-3 (S. D. Ill. Dec. 11, 2009) (recommitting matter back to magistrate judge to make an explicit credibility determination about plaintiff's testimony regarding his efforts to exhaust administrative remedies).

The Court makes a finding that plaintiff's version of his efforts to exhaust is not credible. Defendants are justified in questioning why plaintiff's account as to why he failed to exhaust keeps

changing as this case proceeds. *See* Doc. 52. *See Nichols v. Walker,* 2010 WL 55676, *8 (S.D. Ill. Jan. 5, 2010) (finding that inmate's testimony about exhaustion lacked credibility when he changed his story about his lack of knowledge about the grievance process.) Plaintiff first claimed he failed to exhaust because he did not think he had to file any grievances (Docs, 1, 52). Curiously, his complaint fails to mention that he asked for, but did not receive the required administrative request forms. His complaint also states that he asked for medical attention twelve times while he was in segregation, but he later states that he asked for grievance forms twelve times (Docs. 1, 39, 52). Plaintiff further contends that he was unable to access to the appropriate grievance forms because he was in segregation; however, an inmate was able to give him a form while "he was in the hole." (Doc. 52).

The Court further finds that the prison is not at fault even if plaintiff sent a "Sensitive 10" (BP-10) or what he calls a "Sensitive 11" to Washington, D.C. Additionally, plaintiff hurt his credibility again by arguing inconsistent facts about his efforts. The complaint is silent about any attempt to exhaust his administrative remedies by utilizing any form to address sensitive issues (Doc. 1). Moreover, plaintiff argued at the hearing that he sent a "Sensitive 10" (BP-10) to Washington, D.C. While a BP-10 is appropriately used when grieving sensitive issues, if plaintiff sent this form to the BOP's director in Washington, D.C., he sent it to the wrong person — the regional director handles these claims. *See Watford v. Kankakee,* 2004 WL 2698955, **2 (7th Cir. Nov. 24, 2004) (inmate failed to exhaust when he sent his grievance form to the wrong department); *see Pozo,* 286 F.3d at 1025 ("prisoner must file complaints and appeals in the place . . . the prison administrative rules require.") Finally, once the evidentiary hearing was over, plaintiff supplemented his response to defendants' motion to state that he meant to represent that he sent to "Sensitive 11" to the BOP director in Washington, D.C. Even if that is true, there is no such form as a "Sensitive 11." As noted above,

sensitive matters are handled by the regional director. Inmates may use BP-11 forms to appeal decisions from the regional director to the General Counsel, a factual circumstance that is clearly not present here.

In conclusion, the undersigned finds that plaintiff failed to exhaust his administrative remedies in Counts I and III because plaintiff failed to comply with the procedures for exhaustion set forth in the Code of Federal Regulations, and not due to any fault of the prison. The undersigned further finds that all the parties agree that plaintiff failed to file an administrative tort claim for Count II of his complaint, and this count should therefore be dismissed.

The undersigned therefore recommends that defendants' motion to dismiss/motion for summary judgment (Doc. 30) and plaintiff's motion to voluntarily dismiss Count II of his complaint (Doc. 48) be **GRANTED.**

**IT IS SO ORDERED.**

**Dated: February 2, 2010**

/*Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**